# Order

**Michigan Supreme Court**
**Lansing, Michigan**

April 25, 2016

151520

SHANNON BITTERMAN,
        Plaintiff-Appellant,

v

CHERYL D. BOLF,
        Defendant-Appellee.

_____/

Robert P. Young, Jr.,
Chief Justice

Stephen J. Markman
Brian K. Zahra
Bridget M. McCormack
David F. Viviano
Richard H. Bernstein
Joan L. Larsen,
Justices

SC: 151520
COA: 319663
Saginaw CC: 13-019397-CZ

On April 6, 2016, the Court heard oral argument on the application for leave to appeal the April 14, 2015 judgment of the Court of Appeals. On order of the Court, the application is again considered, and it is DENIED, because we are not persuaded that the question presented should be reviewed by this Court.

BERNSTEIN, J. (*dissenting*).

Defendant, Cheryl Bolf, is the duly elected clerk of the village of Oakley in Saginaw County. Defendant's duties as clerk are set forth by statute in the General Law Village Act at MCL 64.5 to MCL 64.8a. One such duty is to keep minutes of village council proceedings. MCL 64.5(3). The Open Meetings Act (OMA), MCL 15.261 *et seq.*, also requires a public body holding an open meeting under the OMA to keep minutes of the proceedings. MCL 15.269(1). This provision does not task a particular person with minutes-keeping. However, when a closed meeting is held under the OMA, the clerk of the public body holding the meeting is required to take and maintain meeting minutes. MCL 15.267(2). Defendant's duties do not render her a member of the village council; she does not vote on matters before it.

The Oakley Village Council's process for keeping and approving minutes for its regular monthly meetings was as follows. Defendant kept minutes during each council meeting in the form of notes. At the subsequent meeting, defendant would read the minutes of the previous meeting aloud without providing written copies to the council members. A discussion would ensue, and the council members would make any necessary amendments before either approving the minutes "as read" or "as amended." The approved minutes were then set into final form and retained by the village council.

On November 8, 2012, the village council held its regular meeting. Defendant recorded the minutes as usual. At some point, the village council retired into a closed session. The minutes as initially recorded by defendant do not indicate that anything happened after the closed meeting began, including whether the regular open meeting resumed after the closed session was adjourned. Defendant's initial minutes were read and approved at the subsequent meeting on December 10, 2012. After the December meeting ended, however, defendant added a few sentences to the end of the November minutes, describing what had happened after the closed meeting ended and the regular meeting was reopened. Defendant now explains that, at the close of the December meeting, she was notified of an inadvertent omission from the November minutes. She informed the president of the village council, who advised her to add the missing content to the November minutes. Defendant did so, believing this to be her duty as clerk.

Plaintiff, Sharon Bitterman, who is an Oakley resident, filed suit against defendant under MCL 15.273(1), which provides: "A public official who intentionally violates this act shall be personally liable in a civil action for actual and exemplary damages of not more than $500.00 total, plus court costs and actual attorney fees to a person or group of persons bringing the action." Plaintiff alleged that defendant, as the village clerk, was a "public official" under the OMA and that she had intentionally violated the act by altering approved meeting minutes. Plaintiff moved for summary disposition under MCR 2.116(C)(10), arguing that there was no material question of fact regarding whether defendant had violated the OMA because defendant had admitted altering the minutes. Defendant also moved for summary disposition under MCR 2.116(C)(10), arguing that a village clerk is not a public official under the OMA. The trial court heard arguments on these motions and issued a written decision, granting defendant's motion and denying plaintiff's. The trial court agreed with defendant's argument that she was not a public official suable under the OMA.

The Court of Appeals affirmed the trial court. *Bitterman v Bolf*, unpublished opinion per curiam of the Court of Appeals, issued April 14, 2015 (Docket No. 319663). Because the OMA itself provides no definition of "public official," the Court of Appeals relied on the interpretation of "public official" set forth in *People v Whitney*, 228 Mich App 230 (1998). *Id*. at 4. *Whitney* involved not MCL 15.273(1), but rather its criminal liability counterpart, MCL 15.272(1), which provides: "A public official who intentionally violates this act is guilty of a misdemeanor punishable by a fine of not more than $1,000.00." The primary question in *Whitney* was whether the defendants, city council members accused of holding unlawful closed meetings, had intentionally violated the OMA. The *Whitney* Court concluded that the crime of intentionally violating the OMA has three elements: "(1) the defendant is a member of a public body, (2) the defendant actually violated the OMA in some fashion, and (3) the defendant intended to violate the OMA." *Whitney*, 228 Mich App at 253. In this case, the Court of Appeals concluded that *Whitney* was binding, that being a "public official" under the OMA

requires membership in the public body, and that defendant was therefore not a public official liable under MCL 15.273(1). *Bitterman*, unpub op at 4.

I disagree and would reverse the Court of Appeals' decision in this case. First, I disagree with the Court of Appeals that *Whitney* was binding law with regard to the definition of "public official." The Court of Appeals panel determined that the *Whitney* definition of "public official" was not dicta because one of the questions on appeal in that case was the meaning of the phrase "public official who intentionally violates this act." *Id.* But in fact, the only part of this phrase that was truly in question in *Whitney* was the intent element; whether the *Whitney* defendants were actually public officials was not at issue. The *Whitney* defendants were undisputedly public officials with duties under the OMA. Interpreting the meaning of "public official" was not necessary to decide *Whitney*, so the membership requirement articulated in that case is dicta. It is also worrisome that the *Whitney* Court imposed this membership requirement without any substantive discussion. Nothing in the plain language of the OMA would suggest that only a member of a public body could be liable for OMA violations. I am therefore concerned that the lower courts in this case may have wrongly assumed that this aspect of *Whitney* was binding, and I also believe that *Whitney* misconstrued the OMA to begin with.

I believe that the plain language approach to determining the meaning of "public official" proposed by plaintiff allows for the most reasonable interpretation of the OMA. When statutory terms are left undefined, we may resort to the dictionary to determine the plain meaning of the undefined term. *People v Morey*, 461 Mich 325, 330 (1999). A consultation of a lay dictionary reveals numerous definitions of "public" and "official," but no definition of "public official." There is, however, a definition of the similar phrase "public officer": "a person who has been legally elected or appointed to office and who exercises governmental functions." *Merriam-Webster's Collegiate Dictionary* (11th ed). This is remarkably akin to the *Black's Law* definition of "public official" proposed by plaintiff: "Someone who holds or is invested with a public office; a person elected or appointed to carry out some portion of a government's sovereign powers." *Black's Law Dictionary* (10th ed), pp 1259, 1426. Under either of these definitions, defendant qualifies as a public official—defendant is the duly elected clerk of the village of Oakley,

and as clerk she has a number of duties related to the village's functioning as a governmental unit, including keeping a record of the village council's meetings.[1]

Defendant has raised concerns that adopting the broad dictionary definition of "public official" would subject any Tom, Dick, or Harry to civil liability under MCL 15.273, but these concerns are misplaced. Defendant fails to recognize the constraints that the remainder of that statute imposes—personal liability is limited to "[a] public official *who intentionally violates* [*the OMA*] . . . ." MCL 15.273(1) (emphasis added). In order to violate the OMA, a person must have a duty under it. See *Black's Law Dictionary* (10th ed) ("**1.** An infraction or breach of the law; a transgression. . . . **2.** The act of breaking or dishonoring the law; the contravention of a right or duty.") (defining "violation"). A public official would not need to fear personal liability under MCL 15.273(1) unless she or he had a duty under the OMA; otherwise, there could be no violation of the OMA. Furthermore, that violation must be intentional. Both of these

---

[1] Alternatively, the same result is reached by application of the five-part test this Court articulated in *People v Freedland*, 308 Mich 449 (1944). There we held "that five elements are indispensable in any position of public employment, in order to make it a public office of a civil nature": (1) the office "must be created by the Constitution or by the legislature or created by a municipality or other body through authority conferred by the legislature"; (2) the office "must possess a delegation of a portion of the sovereign power of government"; (3) the office's powers "must be defined . . . by the legislature"; (4) the office's duties "must be performed independently and without control of a superior power other than the law, unless they be those of an inferior or subordinate office, created or authorized by the legislature, and by it placed under the general control of a superior officer or body"; and (5) the office must have "permanency and continuity . . . ." *Id.* at 457-458 (quotation marks and citation omitted). Defendant qualifies as a "public official" under this test because (1) the office of village clerk is created by the Legislature, MCL 62.1(1); (2) it holds public power, MCL 64.5 to MCL 64.8; (3) its powers are legislatively defined, *id.*; (4) its duties are performed independently or under guidance of superior offices created by the Legislature, MCL 64.5 to MCL 64.8a; and (5) it has permanency through regular elections, MCL 62.1(1), or through appointment by the village council, MCL 62.1(3). Thus, viewing the term "public official" in MCL 15.273(1) under its plain meaning or under *Freedland*'s technical definition, defendant is a public official.

constraints vitiate the concerns defendant raises about adopting a broad definition of "public official."

For these reasons, I would reverse the judgment of the Court of Appeals and conclude that defendant was a public official within the meaning of the OMA.

MARKMAN, J., joins the statement of BERNSTEIN, J.





I, Larry S. Royster, Clerk of the Michigan Supreme Court, certify that the foregoing is a true and complete copy of the order entered at the direction of the Court.

April 25, 2016

Clerk

s0419